| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>------------------------------------------------------------X<br>THE 1031 TAX GROUP, LLC, *et al.*,<br><br><br><br><br>Debtors.<br>------------------------------------------------------------X<br>INVESTMENT EXCHANGE GROUP, LLC,<br>NATIONAL EXCHANGE SERVICES QI, LTD.,<br>RUTHERFORD INVESTMENT, LLC and<br>SHAMROCK HOLDINGS GROUP, LLC,<br><br>Plaintiffs,<br><br>-against-<br><br>COLORADO CAPITAL BANK, *et al.*,<br><br>Defendants.<br>------------------------------------------------------------X | **NOT FOR PUBLICATION**<br><br>Chapter 11<br><br>Case No. 07-11448 (MG)<br>Jointly Administered<br><br><br><br><br><br><br><br>Adv. Proc. Case No. 07-1710 |

**MEMORANDUM OPINION APPROVING STIPULATIONS PURSUANT TO
BANKRUPTCY RULE 9019**


**A P P E A R A N C E S:**

Norman N. Kinel, Esq.
Paul Traub, Esq.
Terence D. Watson, Esq.
Timothy A. Solomon, Esq.
DREIER LLP
499 Park Avenue
New York, New York 10022
*Attorneys for the Debtors*


Robert W. Hamilton, Esq.
Pedro A. Jimenez, Esq.
JONES DAY
222 East 41st Street
New York, New York 10017

1

*Attorneys for Colorado Capital Bank*

Jeffrey Cohen, Esq.
Aaron Boschee, Esq.
COHEN & ASSOCIATES, P.C.
1600 Stout Street
Suite 1710
Denver, Colorado  80202
*Attorneys for Certain 1031 Exchangers*

**MARTIN GLENN,**
**United States Bankruptcy Judge**

      This matter is before the Court on a motion (the "Motion") by the debtors in the above-captioned chapter 11 cases (the "Debtors")[1] for an order approving the Stipulations of Settlement (collectively, the "Stipulations") between plaintiffs Investment Exchange Group, LLC ("IXG"), National Exchange Services QI, Ltd. ("NES"), Rutherford Investment, LLC ("Rutherford") and Shamrock Holdings Group, LLC ("Shamrock," and together with IXG, NES and Rutherford, "Plaintiffs") and defendants NMS, Inc. ("NMS"), The Guthrie Trust ("Guthrie"), Mark A. Maestas ("Maestas") and Sheila Rae Heller ("Heller," and together with NMS, Guthrie and Maestas, the "Settling Defendants").  Objections were raised by several creditors.  A hearing on the Motion was held on August 16, 2007 after which the Court took this matter under advisement.  After a review of the record, the Court is convinced that the settlement should be approved because it is above the lowest point in the range of reasonableness, and is fair and equitable and in the best interest of the estates.

---

[1]     The Debtors are: The 1031 Tax Group, LLC; 1031 Advance 132 LLC; 1031 Advance, Inc.; 1031 TG Oak Harbor LLC; Atlantic Exchange Company, Inc.; Atlantic Exchange Company LLC; Investment Exchange Group, LLC; National Exchange Accommodators, LLC; National Exchange Services QI, Ltd.; NRC 1031, LLC; Real Estate Exchange Services, Inc.; Rutherford Investment LLC; Security 1031 Services, LLC; Shamrock Holdings Group, LLC; and AEC Exchange Company, LLC.

## I.   JURISDICTION

The Court has jurisdiction to hear this proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and under the July 10, 1984 "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York (Ward, Acting C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. For the reasons explained below, the Plaintiffs' motion for approval for the settlement is approved.

## II.   BACKGROUND

The Debtors were primarily engaged in the business of providing custodial services for customers that intended to complete exchanges pursuant to § 1031 of the Internal Revenue Code (a "1031 Intermediary"). *See* Debtors Rule 1007 Affidavit at ¶ 7-8 (Main Case ECF Doc. No. 2). In order to carry out their role as a 1031 Intermediary, Plaintiffs opened and maintained interest-bearing bank accounts (the "Accounts") at Colorado Capital Bank. *See Complaint* at ¶ 22, dated May 22, 2007 (ECF Doc. No. 1). The Settling Defendants deposited funds in the Accounts. Specifically, NMS deposited $1,905,643.73 in Account number 85000419 on April 27, 2007; Guthrie deposited $793,687.85 in Account 419 on May 1, 2007; Maestas deposited $108,145.89 in Account 419 on April 30, 2007; and Heller deposited $513,322.81 first into Account 419 and then on April 17, 2007 such funds were transferred into Account number 85001101 (the "Deposits").

On May 14, 2007, certain of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Pursuant to a comfort order, CCB transferred the

3

funds in the Accounts, including the Deposits, by wire transfer into a segregated interest bearing Debtor-in-Possession bank account with J.P. Morgan Chase Bank. *See Transfer Order* (ECF Doc. No. 190). The Transfer Order preserved CCB's alleged rights of recoupment and/or setoff against the funds in the Accounts. *See id.* at p. 4.

Plaintiffs commenced this Adversary Proceeding on May 22, 2007, seeking, among other relief, a declaratory judgment that the funds in certain Accounts maintained at CCB are property of Plaintiffs' bankruptcy estates. The Settling Defendants claimed that some of the funds in the Accounts are their property. Specifically, the Settling Defendants claim that the entire amount of their Deposits with the Plaintiffs are subject to express, resulting and/or constructive trusts under applicable non-bankruptcy law and, therefore, are not property of the estate pursuant to § 541(d) of the Bankruptcy Code. The Settling Defendants also allege that they are able to adequately trace their Deposits to specific funds currently held by the Plaintiffs, such that the imposition of a trust upon such funds is proper.

On July 27, 2007, Plaintiffs moved for summary judgment with respect to Count I of the Complaint as against each of the defendants in the Adversary Proceeding. *See Motion* (ECF Doc. No. 181). By the Stipulations, the Debtors and the Settling Defendants seek to resolve their dispute over the funds at issue. The Stipulations provide that in full and final settlement of the parties' disputes, the Debtors will make the following payments (collectively, the "Settlement Payments") to NMS, Guthrie, Maestas and Heller out of the Debtor-in-Possession bank account at JPMorgan Chase Bank, Account #904209652: (i) $1,755,643.73 to NMS, (ii) $733,687.85 to Guthrie, (iii) $100,000 to Maestas and (iv) $474,823.81 to Heller. The Settlement Payments are less

4

than the full amounts of the Deposits. The Debtors will retain the balance of the Deposits for use "in the ordinary course of their businesses" subject to the claims of CCB for recoupment and setoff.

Various parties filed papers in support of and in opposition to the Motion. The Creditors Committee filed a statement in support of the Motion contending that the Stipulations are fair and reasonable, are in the best interests of the Plaintiffs' estates and their creditors and, therefore, should be approved. The Creditors Committee states that the Stipulations will (i) avoid the expense of potentially costly and protracted litigation of the claims in this adversary proceeding, (ii) provide the Plaintiffs' estates with the right to use approximately $256,000 of funds, and (iii) provide the Debtors with a complete, general release from the Settling Defendants of any and all claims they may have, whether raised in connection with this adversary proceeding or otherwise.

Several 1031 Exchangers objected to the settlement arguing that the proposed settlement is not fair and equitable because it does not comply with the factors set forth in *In Re Iridium Operating, LLC*, 478 F.3d 452 (2d Cir. 2007). *See*, *e.g., Vista Enclave Objection* at p. 2-3 (ECF Doc. No. 326). The 1031 Exchangers also objected on the basis that the Court lacks the authority to approve the Settlement Payments given that ownership of the funds in the Accounts are at the center of this controversy and, unless and until the Court issues a declaration that the funds are property of the Plaintiffs' bankruptcy estates, the Debtors cannot dispose of those funds. *See Alvarez Family Trust Objection* at pp. 3-4 (ECF Doc. No. 322) and *Loulourgas Properties Objection* at pp. 2-3 (ECF Doc. No. 332). The 1031 Exchangers also argue that the settlement results in

5

preferential treatment of four of the exchangers to the detriment of the remaining claimants. *See id.*[2]

As discussed below, the Court will approve the settlement because it is convinced that the settlement is above the lowest point in the range of reasonableness, and is fair and equitable and in the best interest of the estates.

### III.    DISCUSSION

Bankruptcy Rule 9019 provides a court authority to "approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Moreover, "compromises are favored in bankruptcy" because they minimize the costs of litigation and further the parties' interest in expediting the administration of a bankruptcy estate. *Myers v. Martin* (*In re Martin*), 91 F.3d 389, 393 (3d Cir. 1996). Approval of a settlement under Bankruptcy Rule 9019 requires a determination by the court as to whether the settlement is fair, equitable and in the best interest of the estate. *In re Drexel Burnham, Lambert Group, Inc.*, 134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991).

In determining whether to approve a settlement, a court's responsibility is "to canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *Id.* at 497. Courts have developed standards to evaluate if a

---

[2]    Colorado Capital Bank ("CCB") filed an objection to the Motion stating that it does not object to the Settlement Payments but takes issue with the language of the proposed orders approving the Stipulations ("Stipulated Orders"), which would allow the Plaintiffs to use the Retained Funds thereby depriving CCB of the opportunity to assert its rights of recoupment and setoff with respect to these funds. *See CCB Objection* at pp. 3-4. CCB contended that the Plaintiffs and the Settling Defendants do not have the power to deprive CCB of these rights; especially where such rights are expressly preserved by the Transfer Order. *Id.* at p. 4. CCB requested that the Court strike, paragraph 4 of the Stipulated Orders, which would have allowed the Plaintiffs to use certain of the Transferred Funds "in the ordinary course of their businesses without further order of the Court." The Plaintiffs and CCB ultimately resolved this issue and now agree that the Retained Funds are property of the estate pursuant to § 541 of the Bankruptcy Code and that the terms and conditions of the Transfer Order shall apply to these funds and that the Debtors may not use these funds without further order of the Court.

6

settlement is fair and equitable, and to that end, courts in this Circuit have set forth factors for approval of settlements. *In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007). The factors relevant to this settlement are: (1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment; (3) the paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement; (4) whether other parties in interest support the settlement; (5) the competency and experience of counsel supporting the settlement; and (6) the extent to which the settlement is the product of arm's length bargaining. *Id.* Applying these factors, the Court concludes that the settlement is above the lowest point in the range of reasonableness, and fair and equitable and in the best interest of the estate.

    *(i)    Factors One and Two*

With respect to the first two factors for Rule 9019 approval, (1) the balance between the litigation's likelihood of success and the settlement's future benefits and (2) the chances that the litigation will be complex and protracted, the Court concludes that in assessing the risk of establishing the ownership of the funds, the Debtors and the Settling Defendants each face obstacles in establishing that the funds are either property of the estate, or are subject to the Settling Defendants' claims of express, constructive, or resulting trusts.[3]

---

[3] On August 16, 2007, the Court denied the Plaintiffs' Motion for Summary Judgment and several defendants' cross-motions for summary judgment because there are disputed issues of material fact regarding the existence of express, constructive or resulting trusts over the Deposits. Trial has been scheduled for September 5, 6 and 7, 2007.

7

The settlement's benefits are substantial, including allowing the Settling Defendants to close pending transactions pursuant to § 1031 of the Internal Revenue Code, thereby mitigating potential additional damage claims (including potential consequential damages) against the Debtors' estates. Further, the settlement achieves a (i) reduction in the potential claims by NMS, Guthrie, Maestas and Heller in the amounts of $150,000, $60,000, $8,145.89 and $38,499, respectively (based on the amounts of the deposits such Parties caused to be made in the Accounts), plus interest on such amounts, together with (ii) a full release of the Debtors' estates by the Settling Defendants. For these reasons, the Court concludes that these factors weigh heavily in favor of approving the settlement.

*(ii)    Factors Three and Four*

The third factor asks the Court to evaluate whether the settlement is in the interests of the creditors. The fourth factor looks to what extent other parties in interest support the settlement. Here, the Creditors' Committee supports the settlement.

As discussed above, several 1031 Exchangers oppose the settlement contending that the Court lacks the authority to approve the Settlement Payments given that the Plaintiffs are essentially using other exchanger's funds to settle these disputes and ultimately preferring these Settling Defendants over other exchangers that deposited funds in the Accounts.

If the Court determines after trial that the Deposits made by the Settling Defendants are subject to express, constructive or resulting trusts, the Settling Defendants would be likely to recover the entirety of their Deposits, not just the amounts of the Settlement Payments. This is because, based on the evidence presented at the settlement

8

hearing, the Settling Defendants are in a unique position, compared with almost all other 1031 Exchangers, in that the Settling Defendants likely can "trace" the funds that they deposited into the Accounts. Indeed, Vista Enclave admits as much as it stated in its Objection that the exchangers are in identical positions "with one possible exception – tracing." *See Vista Enclave Objection* at p. 3. Because the Court denied the summary judgment motions, both Plaintiffs and the Settling Defendants bear substantial risk whether express, constructive or resulting trusts will be found to exist. But assuming a trust relationship is found to exist, only those 1031 Exchangers who can trace their funds would be entitled to any recovery. 5 COLLIER ON BANKRUPTCY ¶ 541.11[5]; *see Cunningham v. Brown,* 265 U.S. 1, 11 (1924) (noting that a victims of a ponzi scheme can follow the money wherever they can trace it and assert possession of it on the ground that there is a resulting trust . . . "[b]ut to succeed they must trace the money"); *see Hill v. Kinzler (In re Foster),* 275 F.3d 924 (10th Cir. 2001) ("To warrant the imposition of a constructive trust over the property of a debtor, a claimant must . . . be able to trace the wrongfully held property."). Based on the evidence introduced at the settlement hearing, it appears that only the Settling Defendants – and perhaps one other 1031 Exchanger – can trace their funds.

Without definitively resolving the issue at this time, the Court would most likely employ the direct tracing method adopted by the Tenth Circuit in *Foster v. Hill*, 275 F.3d 924 (10th Cir. 2001), or the pro rata method set forth in *In re Rhine,* 241 F. Supp. 86, 92 (D. Co. 1965), and adopted by RESTATEMENT (FIRST) OF RESTITUTION § 213. Under either method, the Settling Defendants would be able to trace their funds and thereby satisfy the tracing requirement. With the exception of Heller, the Settling Defendants

9

wired their money into Account number 85000419 ("Account 419"), and there were no withdrawals from the account following the Deposits into the account (except for a debit of approximately $1000 which the Court views as *de minimus*). On April 17, 2007, Heller deposited $513,322.81 first into Account 419 and later that day these funds were transferred into Account number 85001101 ("Account 1101"). As with Account 419, there were no subsequent withdrawals from Account 1101. Thus, the Settling Defendants' funds remained on deposit and undisturbed. As such, these funds are likely readily identifiable under either the direct tracing method or the pro rata method. Under these circumstances, the Settling Defendants would likely be able to trace their funds should the Court find these funds subject to a trust. For these reasons, the Court concludes that factors three and four weigh heavily in favor of approving the settlement.

    *(iii)    Factors Five and Six*

With respect to the fifth factor, counsel on both sides are competent and experienced. With respect to the sixth factor, the settlement was negotiated in good faith and at arms-length by the parties. No evidence points to the contrary. For these reasons, the Court concludes that these factors weigh in favor of approving the settlement.

## IV. CONCLUSION

In light of the foregoing, the Court finds that the settlement should be approved because it is above the lowest point in the range of reasonableness, and is fair and equitable and in the best interest of the estates.

**IT IS SO ORDERED.**

DATED: New York, New York
August 23, 2007

                                            **/s/ Martin Glenn**
                                        **THE HON. MARTIN GLENN**
                                      **UNITED STATES BANKRUPTCY JUDGE**